1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LEILANI MOLINA,                          No.  2:17-cv-01991 CKD

12                 Plaintiff,

13         v.                                  ORDER

14    NANCY A. BERRYHILL, Acting
      Commissioner of Social Security,
15
                   Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title

20   XVI of the Social Security Act ("Act").  The parties have consented to Magistrate Judge

21   jurisdiction to conduct all proceedings in the case, including the entry of final judgment.  For the

22   reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny

23   the Commissioner's cross-motion for summary judgment.

24   BACKGROUND

25         Plaintiff, born September 2, 1962, applied on May 15, 2013 for SSI and disability

26   insurance benefits, alleging disability beginning February 1, 2011.  Administrative Transcript

27   ("AT") 82-83, 225-231.  Plaintiff alleged she was unable to work due to irritable bowel

28   syndrome, right knee injury, arthritis, hypertension, and acid reflex disease.  AT 82-83.  In a

                                              1

decision dated June 3, 2016, the ALJ determined that plaintiff was not disabled.[1]  AT 27-39.  The

ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social
>     Security Act through December 31, 2017.
>
> 2.  The claimant has not engaged in substantial gainful activity since
>     February 1, 2011, the alleged onset date.
>
> 3.  The claimant has the following severe impairments:
>     osteoarthritis, obesity, irritable bowel syndrome (IBS), plantar
>     fasciitis, fibromyalgia, knee degeneration, and chronic
>     obstructive pulmonary disease (COPD).
>
> 4.  The claimant does not have an impairment or combination of
>     impairments that meets or medically equals one of the listed
>     impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
part, as an "inability to engage in any substantial gainful activity" due to "a medically
determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful
> activity?  If so, the claimant is found not disabled.  If not, proceed to
> step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If
> so, proceed to step three.  If not, then a finding of not disabled is
> appropriate.
>
> Step three:  Does the claimant's impairment or combination
> of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App.1?  If so, the claimant is automatically determined
> disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past
> work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional
> capacity to perform any other work?  If so, the claimant is not
> disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
burden if the sequential evaluation process proceeds to step five.  Id.

2

1

2

3

4

5

6

7
    5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk up to 6 hours out of an 8 hour workday; she can sit up to 6 hours of an 8 hour workday; she can occasionally climb ramps and stairs; she can occasionally balance, kneel, crouch, and crawl; she can never climb ladders, ramps, and stairs[2]; she can frequently stoop; she can change positions for 2 minutes every hour at her workstation; she should avoid concentrated exposure to extreme cold and extreme heat; she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; she should avoid even moderate exposure to hazards.

8

9
    6. The claimant is capable of performing past relevant work as a medical secretary. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

10

11
    7. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2011 through the date of this decision.

12

13
AT 29-38.

ISSUES PRESENTED

14

15
    Plaintiff argues that the ALJ committed the following errors in finding plaintiff not

disabled: (1) The ALJ's residual functional capacity (RFC) finding is not supported by substantial

16

17
evidence; (2) the ALJ erroneously failed to find plaintiff's impairments severe at Step 2; and (3)

the ALJ erred in her adverse credibility finding as to plaintiff.

18

19
LEGAL STANDARDS

    The court reviews the Commissioner's decision to determine whether (1) it is based on

20

21
proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

22

23
evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

24

25
mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th

Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is

26

27

28
_____

[2] While the RFC is internally inconsistent as to whether plaintiff can "occasionally" or "never" climb ramps and stairs, it appears the ALJ meant to indicate that plaintiff could never climb "ladders, ropes, and scaffolds." See AT 71 (emphasis added).

1    responsible for determining credibility, resolving conflicts in medical testimony, and resolving

2    ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

3    "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

4    rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

5        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

6    Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

7    conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not

8    affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see

9    also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the

10   administrative findings, or if there is conflicting evidence supporting a finding of either disability

11   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

12   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

13   weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

14   ANALYSIS

15       A.  Residual Functional Capacity

16       Plaintiff argues that the ALJ erred by relying on a medical opinion that predated some

17   significant medical events, and relied on her own review of raw medical data in formulating the

18   RFC. This is error, plaintiff contends, because the ALJ's lay interpretation of the medical

19   evidence does not constitute substantial evidence in support of the RFC.

20       Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for

21   assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person

22   "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003);

23   see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity

24   reflects current "physical and mental capabilities"). RFC is assessed based on the relevant

25   evidence in the case record, including the medical history, medical source statements, and

26   subjective descriptions and observations made by the claimant, family, neighbors, friends, or

27   other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must

28   consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of

4

work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)

The ALJ presented a detailed summary of medical evidence showing some impairment to plaintiff's right knee. AT 35. In August 2012, plaintiff fell and injured her knee. AT 35; see AT 342-343. Plaintiff was treated with ibuprofen, and an October 2012 x-ray found no obvious acute fractures or dislocations. AT 35; see AT 325, 342. Plaintiff's knee pain had increased by April 2013, when an examination "indicated right knee joint tenderness, decreased range of motion, and unsteady gait." AT 35; see AT 337, 384. After conservative treatment resulted in "no significant improvements to her knee pain," plaintiff underwent an MRI in August 2013, which revealed "medial and lateral meniscal tears, moderate chondromalacia, and moderate medial and patellofemoral compartment osteoarthritis." AT 35; see AT 414. In December 2013, plaintiff had meniscal repair surgery on her right knee. AT 35; see AT 429, 427.

Six months after surgery, in May 2014, plaintiff was assaulted while working as a home health aide[3] and, afterward, reported pain in her right knee. AT 35; see AT 49-50, 509, 574. In July 2014, plaintiff underwent an MRI for a worker's compensation report. AT 35; see AT 524. "Upon review, the treating doctor reported the MRI scan did not show 'anything acute as far as injuries are concerned.'" AT 35; see AT 511. Plaintiff was prescribed treatment, including physical and aquatic therapy, for ongoing knee pain. AT 35; see AT 512, 528. "Although an x-ray in April of 2015 indicated some positive findings, there was no significant worsening of plaintiff's knee," the ALJ wrote. AT 35; see AT 565. The ALJ concluded that plaintiff's right knee impairment did not preclude her from all work. AT 36.

---

[3] Plaintiff was attacked by a client with psychological problems. The assault lasted for approximately ten minutes until someone stopped it. AT 49-50, 567, 574.

1    Turning to the opinion evidence, the ALJ adopted the functional limitations set forth by

2    State agency medical consultant Dr. H. Crowhurst, who opined that plaintiff could perform light

3    work with certain limitations, including hourly changes of position.  AT 36; see AT 109-110.  As

4    to plaintiff's right knee, Dr. Crowhurst opined in February 2014:

5               Claimant fell in 2012, sustaining trauma to her right knee.  X-rays
            found no evidence of fracture or other significant bone injury.  There
6            has always been full ROM of the knee, but with some pain and
            palpable bone injury.  However, right knee MRI on 8/19/2013
7            documented both medial and lateral meniscus tears.  On 12/04/2013,
            claimant underwent [surgery].  Post-op, appears to be doing well
8            with physical therapy.  However, . . . claimant should be restricted to
            a light level of work, in an effort to forestall possible total knee
9            arthroplasty for as long as possible.

10   AT 111; but see AT 402 (December 2012 medical record notes decreased range of motion in right

11   knee, along with joint tenderness and unsteady gait).  The ALJ assigned this opinion "great

12   weight because it is well reasoned and consistent with the overall medical record."  AT 36.

13       Plaintiff points out that Dr. Crowhurst's review predated the following medical evidence:

14   plaintiff's May 2014 injuries to her neck and left shoulder and re-injury to her right knee when

15   she was attacked at work (AT 515); her June 2014 examination by a worker's compensation

16   physician, Dr. Cohen, who diagnosed left neck sprain and right knee sprain, and prescribed a cane

17   (AT 574-575); and the July 2014 MRI of plaintiff's knee, which showed "an oblique tear and

18   chondromalacia at the root attachment, posterior horn and midbody of medial meniscus."  AT

19   541-542.  Later in 2014, plaintiff was prescribed 12 weeks of physical therapy and underwent

20   injections in her right knee.  AT 535-536, 548, 550, 555.  Medical notes from late 2014 refer to

21   the attack and plaintiff's "right knee injury" and "right knee medial meniscus tear sprain."  AT

22   551-565.  At the November 2015 hearing before the ALJ, plaintiff testified that she underwent a

23   second knee surgery earlier that year.  AT 51.  However, a June 2015 medical summary does not

24   mention any such surgery and there is no documentation of it in the medical record.  See AT 291-

25   292.

26       Dr. Crowhurst's February 2014 review also predated an October 2014 examination

27   concluding that plaintiff had reduced ranges of motion in her neck and shoulder, and noting that a

28   ////

cervical compression test was positive.[4]  AT 567.  Nor did it account for Dr. Cohen's October

2014 diagnoses of left neck sprain and C5-6 herniated nucleus pulposis (HNP).  AT 554.  In sum,

the ALJ reviewed certain medical evidence, generated in the aftermath of plaintiff's May 2014

injuries, without the aid of a medical expert.  This evidence included x-rays, MRIs, and clinical

findings.  AT 35.

Defendant argues that the ALJ properly relied on Dr. Crowhurst's opinion in formulating

the RFC because it was consistent with the other medical evidence, which the ALJ reviewed and

concluded did not bar plaintiff from light work.

While the ALJ discussed the medical evidence subsequent to plaintiff's May 2014 attack

and injuries, she made an independent evaluation of the diagnosed impairments on plaintiff's

ability to work on a function-by-function basis.  See Stevenson v. Colvin, 2:15-cv-0463 CKD

(E.D. Cal. Oct. 27, 2015), at 6-7.  The ALJ found the effects of any such impairments negligible,

such that they did not alter the February 2014 functional assessment of Dr. Crowhurst.  Under the

circumstances, however, the ALJ's duty to further develop the record was triggered, warranting a

consultative examination by a physician who had access to plaintiff's medical records through the

May 2014 incident and its aftermath.  See Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal.

2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . .

and must not succumb to the temptation to play doctor and make . . . independent medical

findings.").  In Stevenson, supra, the undersigned concluded from similar facts that "the ALJ

improperly interpreted the treating records that were available and made an RFC determination

based on that raw medical data.  Accordingly, the ALJ committed prejudicial error that

invalidated his physical RFC findings."  Id. at 8 (collecting cases); see also Rivera v. Berryhill,

2017 WL 5054656, *4 (C.D. Cal. Oct. 31, 2017) (ALJ "may not act as his own medical expert as

he is 'simply not qualified to interpret raw medical data in functional terms'"), quoting Nguyen v.

Chater, 172 F.3d 31, 35 (1st Cir. 1999).

---

[4] A positive cervical compression test (or Spurling maneuver) indicates cervical radiculopathy,
whose symptoms include pain, weakness, or numbness in the arm or hand muscles.  See
https://www.healthline.com/health/spurling-test (last visited on November 26, 2018).

1    Based on the foregoing, the undersigned concludes that the RFC is not supported by

2    substantial evidence and plaintiff is entitled to summary judgment on this basis. The court does

3    not reach the remaining issues.

4    CONCLUSION

5    With error established, the court has the discretion to remand or reverse and award

6    benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded

7    under the "credit-as-true" rule for an award of benefits where:

8    (1) the record has been fully developed and further administrative
     proceedings would serve no useful purpose; (2) the ALJ has failed to
9    provide legally sufficient reasons for rejecting evidence, whether
     claimant testimony or medical opinion; and (3) if the improperly
10   discredited evidence were credited as true, the ALJ would be
     required to find the claimant disabled on remand.
11

12   Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the

13   "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when

14   the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within

15   the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d

16   403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative

17   proceedings would serve no useful purpose, it may not remand with a direction to provide

18   benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir.

19   2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the

20   proper approach is to remand the case to the agency.").

21   Here, the record as a whole creates serious doubt as to whether the claimant was disabled

22   during the relevant period. As discussed above, the record has not been fully developed such that

23   the ALJ could make a proper RFC determination regarding the functional impact of plaintiff's

24   physical impairments throughout the relevant time period. Thus, additional development of the

25   record is warranted.

26   On remand, the ALJ shall obtain a consultative physical examination by a physician who

27   has full access to plaintiff's past medical records. The consultative examination shall focus on

28   the functional limitations caused by plaintiff's physical impairments during the relevant time

8

period.[5]  The ALJ is also free to develop the record in other ways, as needed.

The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand.  The court also does not instruct the ALJ to credit any particular opinion or testimony.  The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period – provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the reasons stated herein, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is granted for purposes of further development of the record as set forth above;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is denied; and

3. This matter is remanded for further proceedings consistent with this order.

Dated:  December 6, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/molina1991.ssi.ckd

_____

[5] Although the consultative examination will take place in the present, the consultative examiner shall use best efforts, utilizing the findings of present physical examination, plaintiff's past medical records, and the examiner's clinical expertise and judgment, to render an opinion regarding plaintiff's functional capacity during the relevant period.